UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADEZHDA KOROBOVA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 2:18-cv-02577-AC<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the court will GRANT plaintiff's motion for summary judgment, and DENY the Commissioner's cross-motion for summary judgment.

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

## I. PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits on May 22, 2015 and for supplemental security income on May 30, 2015. Administrative Record ("AR") 23.[2] The disability onset date for both applications was alleged to be May 1, 2015. Id. The applications were disapproved initially and on reconsideration. Id. On May 16, 2017, ALJ Sara A. Gillis presided over the hearing on plaintiff's challenge to the disapprovals. AR 52-70 (transcript). Plaintiff appeared with her non-attorney representative, Svetlana Kumansky, and testified at the hearing.[3] AR 52-53, 139-40. Vocational Expert Mr. Reed also testified. AR 52-53.

On September 27, 2017, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 23-35 (decision), 36-40 (exhibit list). On July 17, 2018, after receiving a Request for Review of Hearing Decision as an additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision).

Plaintiff filed this action on September 19, 2018. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383(c)(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 8, 30. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 14 (plaintiff's summary judgment motion), 23 (Commissioner's summary judgment motion), and 28 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1965, and accordingly was 49 years old on the alleged disability onset date, making her a "younger person" under the regulations. AR 33; see 20 C.F.R. §§ 404.1563(c), 416.963(c) (same). Plaintiff has a limited education and can communicate in English. AR 33.

---

[2] The AR is electronically filed at ECF Nos. 11-3 to 11-9 (AR 1 to AR 449).
[3] Although the transcript provides that claimant was represented by attorney "Ms. Kovalski," AR 52, the ALJ's statement of procedural history provides that claimant was represented by non-attorney representative "Svetlana Kumansky," AR 23. Claimant's fee agreement also reflects that she retained "Svetlana Kumansky," a non-attorney representative. AR 139-140.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

////

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . . .'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since May 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: depressive disorder, anxiety disorder/PTSD (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can perform simple repetitive tasks with no public contact.
>
> 6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. [Step 5] The claimant was born [in 1965] and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date May 1, 2015. She turned 50 [in 2015] . . . (20 CFR 404.1563 and 416.963).
>
> 8. [Step 5, continued] The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

5

      9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

      10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

      11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 25-34.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 34-35.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred (1) in evaluating the medical opinion evidence, and (2) by improperly discrediting plaintiff's testimony. ECF No. 14 at 7-15. Because the court agrees with plaintiff as to the first issue, the matter will be reversed and remanded.

    A. <u>The ALJ Erred in Evaluating the Medical Opinion Evidence</u>

        1. <u>The Medical Opinion Evidence</u>

The record before the ALJ included the medical opinions of plaintiff's treating psychiatrist Dr. Katherine Wagner; treating providers of the Sacramento County Department of Behavioral Health Services ("DBHS"); plaintiff's treating therapist Alexander Kagan; Consultative Examiner Dr. Alyssia Liddell; and two State agency medical consultants, Dr. Roy Shapiro and Dr. Jaine Foster-Valdez. AR 29-32. Dr. Wagner diagnosed plaintiff with major depressive disorder, agoraphobia without panic disorder, and other acute reactions to stress, and prescribed multiple psychotropic medications. AR 29; see 360-62. Sacramento County DBHS provider Dr. Elena Rapoport also diagnosed plaintiff with post-traumatic stress disorder, generalized anxiety disorder, and bipolar disorder. AR 29; see AR 444-46.

////

Plaintiff saw Alexander Kagan, MA, LMFT, LPCC, for therapy from January 2014 until June 2015. AR 29. On June 23, 2015, Mr. Kagan completed a medical source statement questionnaire and found that plaintiff rated poorly in the following seven categories: (1) understanding and remembering detailed or complex instructions; (2) ability to attend and concentrate; (3) ability to work without supervision; (4) ability to interact with coworkers; (5) ability to interact with supervisors; (6) ability to adapt to changes in the workplace; and (7) ability to use public transportation to travel to unfamiliar places. AR 364-65. He found that plaintiff rated fairly in the following three categories: (1) ability to carry out instructions; (2) ability to interact with public; and (3) ability to be aware of normal hazards and react appropriately. Id. Mr. Kagan attached an addendum explaining his findings, and the bases therefore, in detail. AR 366-67. On March 16, 2017, Mr. Kagan completed a medical assessment of plaintiff's ability to do work-related activities, in which he noted that plaintiff had three marked limitations and one extreme limitation (in her ability to interact with others). AR 447. On May 2, 2017, Mr. Kagan completed a narrative explanation of these findings. AR 448-49.

Consultative Examiner Dr. Liddell evaluated plaintiff in August of 2015. AR 383. She opined that plaintiff is "markedly impaired" in the following categories: (1) ability to carry out detailed instructions; (2) ability to maintain attention and concentration; (3) ability to interact with coworkers; and (4) ability to deal with various changes in the work setting, all as a result of plaintiff's level of severe depression. AR 383, 387-88. Dr. Liddell found that plaintiff was "moderately impaired" in her ability to understand, remember, and carry out very short and simple instructions, and in her ability to understand detailed instructions. Id.

Non-examining medical consultant Dr. Shapiro found that plaintiff "would be limited from crowded work settings, but she retains the social capacity for routine interaction with coworkers and supervisors." AR 84. Dr. Shapiro also found that plaintiff is moderately limited in sustained concentration and persistence, as "depression/anxiety can impact concentration, but she retains the [concentration, persistence, and pace] for 1–3 step tasks for 2 hours, 8 hour day, 40 hour week." AR 83. On reconsideration, Dr. Foster-Valdez concluded that the initial determination should be affirmed. AR 131-33. Dr. Shapiro and Dr. Foster-Valdez disagreed with

Dr. Liddell's and Mr. Kagan's findings. AR 85-87, 102, 118-19 (noting that both opinions are "less persuasive" because they rely "heavily on the subjective report of symptoms and limitations").

The ALJ stated that she was according Dr. Liddell's findings only partial weight because Dr. Liddell did not have "access to the full medical records and there was no finding of reduced concentration or difficulties with interactions at the time of the evaluation" AR 31. The ALJ accorded Mr. Kagan's opinion only little weight because his findings went to the ultimate issue of disability, and because his 2017 findings were not supported by documentation of recent treatment, as he had not seen the plaintiff since June of 2015. AR 32. The ALJ noted that Mr. Kagan is not an "acceptable medical source" for opinions. Id. The ALJ accorded "substantial weight" to the opinions of the medical consultants. AR 31.

The hypothetical question that the ALJ posed to the VE described an "individual [who] should avoid working with the public, but [who] could interact appropriately with coworkers and supervisors," and who "could maintain concentration, persistence and pace for simple job tasks." AR 67. The ALJ determined that plaintiff is limited in her RFC to "simple repetitive tasks with no public contact." AR 28. Thus, the ALJ did not incorporate into the hypothetical or the RFC any limitation from crowded work settings, more-than-routine interactions with coworkers and supervisors, or a restriction on how long plaintiff can concentrate. See AR 28, 67-69.

    2. <u>Principles Governing the ALJ's Consideration of Medical Opinion Evidence</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996).

> Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).

"The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

### 3. The ALJ Did Not Err in Evaluating Dr. Liddell's Opinion

The ALJ articulated a specific and legitimate reason to discount Dr. Liddell's findings: she did not have access to plaintiff's medical records. The Social Security Regulations state: "If we arrange for [a consultative examination] or test, . . . [w]e will also give the examiner any necessary background information about your condition." 20 C.F.R. §§ 404.1517, 416.917. Several courts have held that where a CE does not review or have access to and review a social security applicant's medical records, the CE's opinion may not constitute substantial evidence for discounting treating physicians and should not be given "great weight." Carreras v. Berryhill, No. CV 16-01728-RAO, 2017 WL 4274498, at *6 (C.D. Cal. Sept. 25, 2017); Sloan v. Astrue, No. CV 8-07479-MAN, 2009 WL 5184426, at *4 n.11 (C.D. Cal. Dec. 21, 2009) ("Critically, [the consultative examiner] did not review any of plaintiff's medical records. . . . Thus, it is unclear whether [the consultative examiner's] assessment of plaintiff is based on a sufficiently complete picture of plaintiff's condition. . . . [The consultative examiner's] opinion may not constitute substantial evidence."); Ladue v. Chater, No. C-95-0754 EFL, 1996 WL 83880, at *5 (N.D. Cal. Feb. 16, 1996).

Here, Dr. Liddell notes that her report is based on a single interview and should be considered as supplemental. AR 388. She states that she reviewed "Disability Report — Adult

Form Social Security Administration Form 3368, Section 1 through Section 4." AR 383. This rather sparse three-page form was filled out by plaintiff's representative and is not a medical record. See AR 258-260. The ALJ's reason for discounting Dr. Liddell's findings is specific and legitimate, as Dr. Liddell did not review plaintiff's medical records.

### 4. The ALJ Erred in Evaluating Treating Therapist Alexander Kagan's Opinion

The ALJ did not provide a specific and germane reason to discount Mr. Kagan's findings. Testimony from a treating therapist qualifies as an "other source" or as a non-acceptable medical source. 20 C.F.R. § 404.1527(f) (2017); 20 C.F.R. § 404.1513(d) (2013).[4] The opinions of non-acceptable medical sources, who often have "close contact with . . . individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time," are to be considered as "valuable sources of evidence for assessing impairment severity and functioning." SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006), at *3. Depending on the facts of a particular case, "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." Id. at *5. Such testimony from an "other source" can only be discounted by providing specific reasons, germane to the witness. Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1053-54 (9th Cir. 2006); see SSR 06-03p at *3, *5.

The ALJ's first reason for discounting Mr. Kagan's opinion — that it is an impermissible finding on the ultimate issue of disability, AR 32 — is not sufficient. A determination of a claimant's ultimate disability is indeed reserved to the Commissioner, and a therapist's opinion deeming a patient disabled is not entitled to "special significance." 20 C.F.R. § 404.1527(d). However, the mere fact that a medical source offers an opinion as to the ultimate issue of disability is not a valid reason to discount the opinion in its entirety. See, Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). Accordingly, the ALJ erred in discounting Mr. Kagan's opinion as to particular limitations, as opposed to his conclusion of disability, on this basis.

---

[4] There have been recent updates to the rules on acceptable medical sources; this section of the code applies to claims filed before March 27, 2017. 20 C.F.R. § 404.1527. Plaintiff's claims were filed in May of 2015. AR 230.

10

Defendant argues that the ALJ rejected Mr. Kagan's opinion not only because it impermissibly opined that plaintiff was disabled, but because the opinion was not supported. ECF No. 23 at 9-10. This contention fails because, first, the ALJ specifically stated that she could not give *any* weight to the opinion because doing so "would confer on an outside source the authority to make this determination which it is the Commissioner's statutory responsibility to perform." AR 32; see Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."). Second, Mr. Kagan treated plaintiff for a year and a half, meeting with her nine times, AR 370-75, and his evaluation is based on a "Mental Status Examination, Beck's Depression Inventory and Burns Anxiety Scale,"[5] as well as on clinical interviews. AR 448. Mr. Kagan's evaluation is thus supported by clinical interviews and examinations.

Secondly, the ALJ discounted Mr. Kagan's findings on the ground that Kagan last saw plaintiff in June 2015, and so the opinions he gave a year and a half later, in 2017, are not supported. AR 32. Mr. Kagan's cumulative treatment record does reflect that he last spoke with plaintiff on June 23, 2015. AR 375. Yet on that date, Mr. Kagan administered psychological examinations to plaintiff and completed a written evaluation of her limitations. AR 364-65, 375. The ALJ's reason for discounting Mr. Kagan's 2017 findings does not extend to this earlier evaluation; as such, the ALJ has not provided a specific and germane reason to discount Mr. Kagan's 2015 evaluation. Moreover, the 2017 Kagan report appears to constitute an explanatory supplement to his 2015 report, as all of his evaluations are based on the same content and are consistent.

For all these reasons, the ALJ erred in discounting the treating therapist's findings.

////

---

[5] Defendant states that "there is no record" of the testing done by Mr. Kagan. ECF No. 23 at 10:7-10. Similarly, the ALJ writes that Mr. Kagan's "records include no psychiatric or mental status examinations." AR 29. Yet Mr. Kagan's cumulative treatment record reflects that on June 23, 2015, he "administered to the client the [Beck's] depression inventory as well as Burns anxiety scale. On both measures, the client score was significant and suggested the diagnosis of major depressive disorder[,] generalized anxiety disorder[,] and possibly panic disorder respectively." AR 375. The characterizations of Mr. Kagan's records are therefore inaccurate.

5. <u>The Hypothetical Question and the RFC Are Not Supported by Substantial Evidence</u>

Although the ALJ accorded substantial weight to the State agency medical consultants' opinions, the ALJ's hypothetical does not reflect all the limitations described in these opinions, and the RFC is similarly flawed. A non-examining physician's function is to read medical evidence in a claimant's case records, decide whether or not the claimant's impairments meet or equal the Listings, and determine the claimant's Residual Functional Capacity. 20 C.F.R. § 416.927(e); 20 C.F.R. § 416.913a ("[B]ecause agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation," ALJs "must consider this evidence"). "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'" <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)).

A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must consider all the medical evidence in the record together with "the rest of the relevant evidence." 20 C.F.R. § 416.927(b); <u>see also</u> 20 C.F.R. § 416.945(a)(1) ("We will assess your [RFC] based on all the relevant evidence in your case record."). In determining the RFC, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence. <u>See</u> <u>Bayliss</u>, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints"); <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not required to incorporate into RFC those findings from treating-physician opinions that were "permissibly discounted"). An ALJ's decision is not supported by substantial evidence when she formulates an RFC that fails to take into account claimant's limitations. <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009); <u>see also</u> <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (holding that the RFC findings need only be

consistent with the relevant assessed limitations and not identical to them). Furthermore, "in hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) (citation omitted). However, an ALJ may not disregard properly supported limitations. Id.; see also Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001) ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations."); Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995).

Here, The ALJ asked the vocational expert questions based on a hypothetical individual of the "same age, education and work history as the Claimant . . . [who] can understand, remember and apply simple job instructions; such an individual could maintain concentration, persistence and pace for simple job tasks; such an individual should avoid working with the public, but such an individual could interact appropriately with coworkers and supervisors." AR 67. The ALJ confirmed that this hypothetical involved a "total avoidance of the public." Id. Though the ALJ accorded the State agency medical consultants' opinions "substantial weight," AR 31, the ALJ did not incorporate their limitations regarding crowded work settings, no-more-than-routine coworker and supervisor interactions, and durational restrictions into the hypothetical or RFC. Defendant concedes that, "The ALJ properly afforded significant weight to these opinions because they were supported by the record." ECF No. 23 at 11:22-23.[6] These opinions specifically find that plaintiff "would be limited" in the way she interacts with others at work. AR 83-84; 131-33.

The limitation on interactions with "the public" is not sufficient to account for limitations on interactions with co-workers and supervisors, or generally crowded work environments. Thus, the hypothetical does not reflect all of plaintiff's limitations that are supported by the record. See Robbins, 466 F.3d at 886. The ALJ's error was not harmless because the court cannot assume that the positions listed by the VE in response to the hypothetical — hand packer, dishwasher,

---

[6] As a representative example, Dr. Wagner's unchallenged diagnosis of agoraphobia would support the medical consultants' limitation from crowded work settings. See AR 29.

13

laundry laborer, and industrial cleaner — do not involve crowded work settings or more-than-routine coworker and supervisor interactions. See AR 67-68. In determining the RFC, the ALJ need not consider evidence that was properly rejected; yet here, the ALJ expressly credited this evidence, indicating that the RFC is not supported by substantial evidence.

The ALJ also failed to address limitations on maintaining concentration and attention. At the hearing, plaintiff's representative altered the ALJ's hypothetical and asked the VE about an individual who could only maintain attention and concentration for a third of the day. AR 68. The VE responded, "If the person is unable to maintain . . . attention even for an unskilled job for up to a third of the day, the person would be unemployable." AR 69. One-third of an eight-hour workday is two hours and forty minutes. Thus, the fact that the ALJ did not limit plaintiff's ability to perform simple repetitive tasks by length of time was not harmless, because the record provides that (1) the ALJ credited the opinions of the State agency medical consultants, AR 31; (2) the medical consultants found that plaintiff could only maintain concentration, persistence, or pace "for 2 hours, 8 hour day, 40 hour week," AR 83-84, 131-33; and (3) according to the VE, an individual who cannot maintain concentration for one-third of the day is "unemployable," AR 69. As a result, plaintiff may be "unemployable" because she cannot maintain concentration for one-third of the day, that is, a full two hours and forty minutes. See AR 69. It is true that the medical consultants' language is vague: their conclusion could be interpreted to mean either that plaintiff can only concentrate for two hours per day, or that she must take a break every two hours. Nevertheless, it was error for the ALJ to wholly disregard a limitation that is supported by substantial weight in the record in determining the hypothetical and the RFC.

### B. The ALJ Did Not Improperly Discount Plaintiff's Subjective Testimony

The ALJ did not err in her treatment of plaintiff's subjective testimony. ALJs must take the claimant's symptom testimony into account in determining residual functional capacity. Laborin v. Berryhill, 867 F.3d 1151, 1154 (9th Cir. 2017). Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must

> determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be

> expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.

Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the severity of the symptom is not required. Id. (internal citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons." Id. at 1014-15 (internal citations omitted). While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not arbitrarily discredit a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ found that the record supports plaintiff's allegations of severe medically determinable impairments, which can reasonably be expected to produce the alleged symptoms. AR 29. "However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence." Id. This was because (1) "mental status examination findings and psychiatric findings upon physical exams do not correspond" to the level of symptoms reported; (2) plaintiff "has had very little treatment for her mental impairments," "seeks minimal treatment," was "marginal in complying with medications," and was "absent from care from November 2015 through January 2017"; (3) "to some degree her symptoms and conditions are controlled with the treatment she receives"; and (4) plaintiff has a "rather ordinary range of activities of daily living testified and reported." AR 29-30. The ALJ concluded by stating that, despite these variances, "accommodations are made in the RFC to meet her allegations." AR 30.

It is clear that the ALJ only partially discounted plaintiff's testimony, as the ALJ incorporated plaintiff's subjective reports into the RFC by limiting plaintiff to "no public contact"

15

to account for her continuing mental health symptoms. AR 30; see, e.g., AR 60-61 (describing plaintiff's panic attacks in public). The ALJ also provided specific, clear, and convincing reasons for partially discounting plaintiff's testimony. Although lack of medical evidence cannot form the sole basis for discounting subjective testimony, it is a factor that the ALJ can consider in her credibility analysis. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). In this case, the ALJ provided multiple reasons for partially rejecting plaintiff's testimony as to the severity of her symptoms; thus, the objective findings in the record was a properly considered factor in assessing plaintiff's credibility. See id. Even if consideration of this factor was error, it was harmless in light of the other reasons given for the credibility assessment.

Regarding the second reason given, a claimant's unexplained failure to seek treatment may be relevant in determining credibility. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); see also Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)) ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). Weighing against the ALJ's determination is the fact that plaintiff was prescribed multiple psychotropic medications, including BuSpar, Ambien, Xanax, and Paxil. AR 384. However, the ALJ's reasoning on this point is clear and convincing, especially because plaintiff was absent from care for all of 2016. AR 29-30. Furthermore, the fact that plaintiff did not seek treatment for a year supports the third reason given by the ALJ, that "to some degree her symptoms and conditions are controlled with the treatment she receives." AR 29-30. On this point, plaintiff testified that the medications she takes "do help" her and that she is able to fall asleep. AR 59-60, 65; see also AR 445. Though plaintiff also testified that the medications have significant side effects that make her "feel like a zombie," AR 59-60, 64-65, the ALJ gave a reason to partially discount this assertion, as plaintiff did not report said side effects to her physician at the time. AR 29-30; see AR 432-33; but see AR 14 (plaintiff reports side effects of "sedation" to provider Dr. Park in November 2017).

The final factor — a rather ordinary range of activities of daily living — is a properly considered factor in assessing plaintiff's credibility. Evidence that a claimant engaged in certain

daily activities can support an adverse credibility determination as long as (1) those activities contradicted the claimant's testimony; or (2) the claimant engaged in those activities for a substantial portion of the day and they involved skills transferable to the workplace. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). In Step 4 of the ALJ's analysis, she points to a number of plaintiff's activities, which include being substantially independent in self-care, performing household chores, driving, shopping, walking for exercise, interacting with family and friends, and taking a trip to the mountains and a holiday trip to Seattle to visit a boyfriend. AR 27; see, e.g., AR 61-62, 269-71, 374, 385, 406. The ALJ determined that the "physical and mental abilities requisite to performing many of [these] tasks . . . replicate those needed for obtaining and maintaining employment." AR 27. In Step 5, however, the ALJ's analysis is less clear, as the ALJ states in conclusory fashion that plaintiff has a "rather ordinary range of activities of daily living testified and reported," and plaintiff "was able to travel and visit with a friend" for a holiday. AR 30-31. Considered as a whole, the ALJ's findings indicate that she discounted plaintiff's testimony in part because plaintiff engages for a substantial portion of the day in activities that involve transferable skills. This factor was properly considered by the ALJ in evaluating plaintiff's credibility. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Even if it were not, the ALJ incorporated plaintiff's subjective testimony into the RFC by limiting plaintiff to "no public contact" to account for her continuing mental health symptoms. AR 30.

For all these reasons, the ALJ provided specific, clear, and convincing reasons for finding plaintiff's testimony partially credible, and so reversal is not warranted on this ground.

C. Remand for Benefits or for Further Proceedings

As discussed above., the ALJ erred in evaluating the medical opinion evidence for the reasons stated. Those errors were not harmless, because crediting the opinions of Mr. Kagan and the State Agency medical consultants could result in a finding of disability. Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate

award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

Here, further factual development is needed to determine if and to what extent the medical opinion evidence should be credited, and what the impact of crediting this evidence would be on the RFC and the ultimate determination of disability. For these reasons, the matter is reversed and remanded to the Commissioner for further factual development.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 23) is DENIED;

3. The matter is REMANDED to the Commissioner for further proceedings; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: February 24, 2020

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE